UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAMIEN T.,

        Plaintiff,

    v.                                                                                          **DECISION AND ORDER**

                                                                                                                  19-CV-6835S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.      Plaintiff Damien T.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income benefits under Title XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).  This case is the remand of Plaintiff's prior application, Damien [T.] v. Commissioner, No. 17CV6019CJS, No. 17 (Decision and Order of May 7, 2018) (R.[2] at 686).

    2.      Plaintiff protectively filed his application with the Social Security Administration on October 22, 2013, alleging disability beginning on that date.  He claims disability due to degenerative disc disease and bursitis of the right hip from a July 2013 work injury (R. at 75, 23, 574, 687).  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

    [1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

    [2]Citations to the underlying administrative record are designated as "R."

3.  On August 14, 2015, ALJ David Begley held a video hearing at which Plaintiff—self-represented—and Vocational Expert Bassey Duke appeared and testified. (R. at 32-67, 21.)  At the time of this initial hearing, Plaintiff was 39 years old, with a high school education, and no past relevant work (R. at 26).

4.  The ALJ considered the case *de novo* and, on February 11, 2016, issued a written decision denying Plaintiff's applications for benefits (R. at 706).  After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 697), he sued challenging the Commissioner's final decision.

5.  Judge Charles Siragusa in Damien [T.] v. Commissioner, No. 17CV6019, No. 17 (May 7, 2018), granted Plaintiff's motion for judgment on the pleadings and remanded for further proceedings (R. at 686-95).  Judge Siragusa remanded for the ALJ to consider new evidence Plaintiff later admitted before the Appeals Council (R. at 689-90).  He also rejected the ALJ's conclusion that Plaintiff's conservative treatment allowed him to perform light work (R. at 694).

6.  Following remand by the Appeals Council (R. at 697), ALJ Brian Kane held another hearing on June 20, 2019, with Plaintiff represented by counsel this time, and testimony from independent medical expert, Dr. Jeff Hansen, and vocational expert, Dr. Peter Manzi (R. at 645-85).

7.  ALJ Kane then rendered his decision partially granting Plaintiff's application for benefits (R. at 568).[3]

8.  Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 10, 14.)  Plaintiff filed a response on

---

[3]The ALJ's July 12, 2019, decision became the Commissioner's final decision on this matter following the remand.

July 31, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

9. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

10. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

11. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled, 482 U.S. 137, 140-142 (1987).

12. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra,

4

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

14.	As found by Judge Siragusa, Damien [T.], supra (R. at 687-99), the first ALJ analyzed Plaintiff's claim for benefits under the process set forth above.

> "At step one, the ALJ found Plaintiff had not engaged in any substantial gainful employment since October 22, 2013. [(R. at 23.)]  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease and bursitis of the right hip.  However, at step three, the ALJ also determined that the impairments, either singularly or together, failed to meet or medically exceed the severity of one of the Commissioner's listed impairments. [R. at 23.)]
>
> "Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b).  He added the following restrictions: prohibited from climbing ladders, ropes, and scaffold; occasional climbing of ramps and stairs, balancing, kneeling, stooping, crouching, and crawling; and avoid slippery and uneven surfaces, hazardous machinery, and unprotected heights. [(R. at 23.)]  At step five, considering Plaintiff's age, education, work experience, no past relevant work, and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, specifically:  ticket taker, mailroom sorter, and hand packager. [(R. at 26-27.)]  Accordingly, the ALJ found Plaintiff not disabled. [(R. at 27.)]

(R. at 687-88.)

15.	Following remand, the ALJ again analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of the application, although Plaintiff

5

worked but that activity did not rise to the level of substantial gainful activity.  (R. at 574.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  lumbar spine degenerative disc disease and bursitis of the right hip.  Id.  At step three, the ALJ found that since October 22, 2013, Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 574-75.)

16. Next, the ALJ found that prior to November 1, 2018, Plaintiff retained the RFC to perform sedentary work except he could lift, carry, push or pull ten pounds, and change posture at will while staying on task.

17. The ALJ found that Plaintiff became disabled as of November 1, 2018 (R. at 575).  As of that date, Plaintiff had an RFC to perform sedentary work except he can sit for two hours, stand for two hours, and walk for two hours during an eight-hour workday (R. at 576-77).

18. At step four, the ALJ found Plaintiff is unable to perform any past relevant work, noting that Plaintiff's past work was electronic worker (light, unskilled work), box maker (medium unskilled work), and warehouse worker (also medium unskilled work).  (R. at 577.)  The vocational expert found that a hypothetical claimant like Plaintiff could not perform Plaintiff's past relevant work.  Id.

19. The ALJ accepted the opinion of the vocational expert that, prior to November 1, 2018, there were jobs a hypothetical claimant with Plaintiff's age, education employment skills and experience, and RFC could perform, such as a table worker or order clerk (both sedentary occupations) (R. at 578).  Hence, the ALJ concluded that prior to November 1, 2018, Plaintiff was not disabled.  Id.

20. After November 1, 2018, considering Plaintiff's age, education, work experience, and RFC, there are no jobs that he could perform (R. at 578-79).

21. Accordingly, the ALJ found that Plaintiff's onset date was now November 1, 2018, and he was not disabled prior to that date. (R. at 576-77, 578-79.)

22. The sole issue here is the appropriate onset date. Plaintiff argues that the onset date of November 2018 is not supported by substantial evidence because it ignores treatment records from 2013 to 2018 that establish Plaintiff's disability. For the reasons that follow, this argument is not accepted.

23. Plaintiff argues that an arbitrarily determined onset date is not acceptable (Docket No. 10, Pl. Memo. at 16), Ahisar v. Comm'r, No. 14CV4134 (PKC), 2015 WL 5719710, at *8-9 (E.D.N.Y. Sept. 29, 2015); Pierce v. Berryhill, No. 17CV912, 2019 WL 988451, at *1 (W.D.N.Y. Mar. 1, 2019) (Schroeder, Mag. J.).

24. Plaintiff also contends that the ALJ cherry picked from Dr. Hansen's testimony to support the RFC (id. at 19).

25. Presentation of the chronology of examinations from Plaintiff's work injury in July 2013 to November 2018 is in order to determine whether the ALJ's onset date finding is arbitrary.

26. A chronology from Plaintiff's work injury to November 2018 is in order. In July 30, 2013, Plaintiff was injured (R. at 332). Dr. Svetlana Trounina examined Plaintiff on October 17, 2013, who reported lower back and right hip pain from the July 2013 work injury (R. at 209, 692-93, 575). He reported back pain radiating to his right side with numbness and tingling in his right leg, muscle spasms and weakness. Plaintiff reported that his pain was aggravated by any movement. Dr. Trounina found lumbar tenderness

7

to palpation, decreased range of motion, positive straight leg raising tests, and an antalgic gait. (R. 210, 575). Plaintiff had reduced lower extremity motion strength and right trochanter tenderness (R. at 210, 575). Dr. Trounina diagnosed Plaintiff for herniated disc, spondylosis, radiculopathy, and right hip bursitis (R. at 211, 575-76). Dr. Trounina found that Plaintiff could return to work with limitations on standing, lifting no more than fifteen pounds (among other limitations) (R. at 211, 576). The ALJ gave some weight to this opinion (R. at 576).

27. On April 14, 2014, Plaintiff was observed by Dr. Matthew Grier (R. at 322, 693, 576) who found Plaintiff had right sacroiliac joint pain to palpation and upon standing, Plaintiff had an antalgic gait, positive straight leg raising tests, and mildly diminished right lower extremity strength (R. at 323, 576). Dr. Grier found Plaintiff could not return to work due to his severe pain (R. at 323).

28. On May 1, 2014, Dr. Walter Hoffman performed an independent medical examination of Plaintiff (R. at 332-33, 693, 576). Plaintiff walked slowly with a limp on the right but without using walking aids (R. at 353, 576). He had pain on touching his lumbar and right hip area. His straight leg raising was negative, but it caused Plaintiff back and right hip pain (R. at 334, 576). Dr. Hoffman opined that Plaintiff could perform sedentary work with frequent position changes and no lifting, pushing, or pulling greater than ten pounds (R. at 334, 576). The ALJ then gave this opinion significant weight (R. at 576).

29. In 2016 and 2017, Plaintiff worked but not to the extent to qualify as substantial gainful activity. He testified that he worked in International Paper cutting strings around bales (R. at 652-53). Then he worked for a temporary agency assigned to a computer device manufacturer inspecting computer chips (R. at 654-55).

30. On November 27, 2018, consultative examiner Dr. Rita Figueroa examined Plaintiff (R. at 860 (internal medicine exam), 889 (orthopedic exam), 577). Plaintiff fidgeted and switched from sitting and standing positions every five to ten minutes during the examination (R. at 861, 891, 577). He was unable to walk on his heels, had limited lumbar spine range of motion, and had tenderness in the right sacroiliac joint and sciatic notch (R. at 861, 891, 577). Plaintiff had weakness in the right leg and dull sensation in both legs to pinprick (R. at 862, 892, 577). Dr. Figueroa diagnoses lumbar radiculopathy and cauda equine syndrome (R. at 863, 892, 577). The ALJ also gave significant weight to Dr. Figueroa's findings and opinion (R. at 577).

31. Impartial medical examiner Dr. Hansen testified by telephone during Plaintiff's remanded ALJ hearing (R. at 645, 647, 652, 653, 655-63). Dr. Hansen reviewed Plaintiff's medical record and concluded Plaintiff had degenerative disc disease that was not "real severe" (R. at 657). Dr. Hansen at first relied upon Dr. Hoffman's 2014 examination findings that Plaintiff could perform sedentary work back then (R. at 660). Plaintiff's MRI of his hip in July 2, 2014, was found to be normal (R. at 657). The doctor noted that Plaintiff's medical record showed "some degree of apparent weakness and variable numbness in his right" leg (R. at 658). Plaintiff also had significantly diminished range of motion, but Dr. Hansen concluded that the neurologic findings were not dramatic (R. at 658).

32. Dr. Hansen then acknowledged Dr. Figueroa's 2018 examination that found Plaintiff was "pretty impaired" (R. at 658); Dr. Hansen concluded that Plaintiff could not work at a sedentary level (R. at 659). Acknowledging that Plaintiff did not seek medical care from 2013 to 2018 due to lack of coverage, Dr. Hansen noted the dearth of medical

9

record for that period (R. at 659, 660). The ALJ stated that Dr. Hansen testified that Plaintiff would have a significantly tough time working an eight-hour workday based on Dr. Figueroa's conclusion (R. at 659, 577).

33. During the period 2014 to 2018, Dr. Hansen initially relied upon Dr. Hoffman's sedentary work conclusion, stating that Plaintiff may not have changed in the interval and had little medical care during this period (R. at 660). Dr. Hansen said

> "I don't mean to hem and haw about the date, but it seems as though—and grant that—and I'll leave it separate from his ability to go temporarily back to work in 2017. I think he did it with—under some duress with some pain, and I guess it would depend on some of the legal issues that you have to decide, but medically, it looks, certainly as of the date of Dr. Figueroa's exams in 2018, he's at that functional level. It looks to me like it goes all the way back to 2014. So like I said, I'm trying—I'm not trying to avoid committing to that question. It's just there's a big gap there, Your Honor"

(R. at 660).

34. Plaintiff's counsel then cross-examined Dr. Hansen, asking if Dr. Figueroa's 2018 opinion (that Plaintiff could perform only less than sedentary work) could apply to 2013 or later (R. at 661). After Dr. Hansen stated that he could not hear counsel and asking for the question repeated, the following colloquy occurred:

> "[Plaintiff's Attorney]: In your medical opinion, would Dr. Figueroa's less-than-sedentary RFC be applicable back to this timeframe that Dr. Hoffman examined [2014]?
> "ALJ: I thought he said no, but –
> "[Plaintiff's Attorney]: I wasn't paying attention.
> "[Dr. Hansen, Medical Expert]: I believe it is.
> "ALJ: Okay.
> "[Dr. Hansen]: Yes.
> "ALJ: I'm sorry.
> "[Dr. Hansen]: That's consistent with the rest of the exams in that timeframe. Dr. [Grier] and Dr. [Trounina] saw him before that and, you know, noticed the same things, hip flexion weakness, antalgic gait, slumped posture, significant reduced range of motion, and some sensory changes,

so I think it does go back to Dr. Hoffman's date. I would say less than sedentary rather than sedentary."

(R. at 661-62).

35. The ALJ then asked Dr. Hansen about Plaintiff working in 2016-17 and Dr. Hansen concluded that Plaintiff worked and "basically was functioning in pain, and if he could continue to do that today, I wouldn't tell him not to. I don't think he's necessarily hurting himself, as he's just monitoring that he has discomfort, but I understand your concern." (R. at 662.)

36. The ALJ gave significant weight to Dr. Hansen's testimony because it was supported by Dr. Figueroa's examination finding in November 2018 (R. at 577). This justified finding Plaintiff's worsening condition from November 2018 and justified the onset date (see R. at 577).

37. The question here, however, is Plaintiff's capability to work in 2013 (his claimed onset date) to November 2018.

38. In the end, it is the role of the ALJ to make findings of fact when there is inconsistency, see Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (Docket No. 14, Def. Memo. at 13). That finding is not upset when there is substantial evidence supporting the ALJ's finding.

39. Plaintiff had few medical reports between 2013 and 2018 and this dearth of record is due to Plaintiff not having medical coverage. Thus, the record only contains Dr. Hoffman's 2014 opinion and Dr. Figueroa's 2018 opinion.

40. Dr. Hansen was inconsistent on the question whether Plaintiff could perform only less than sedentary work in 2013-18. He first relied on Dr. Hoffman's 2014 finding that Plaintiff can perform sedentary work and then, under cross-examination, concedes

that Plaintiff could not perform at that level due to Dr. Figueroa's 2018 examination. Dr. Hansen was on the telephone for the hearing and said he had problems hearing (R. at 647, 661). He testified that he did not wish to be pinned down on Plaintiff's status during this period (R. at 660), effectively deferring that finding to the ALJ. In his reply, Plaintiff also noted Dr. Hansen's reluctance to answer whether Dr. Figueroa's November 2018 findings applied to Plaintiff's capability in 2013 to 2018 (Docket No. 15, Pl. Reply at 1).

41. Based upon Dr. Hansen's opinion and the record (limited by the absence of Plaintiff's treatment and his willingness to return to work despite his pain), the ALJ accepted Dr. Hansen's initial opinion that Plaintiff could perform at a sedentary level from 2013 to 2018.

42. The November 2018 onset date (for a less than sedentary work) is based on Dr. Figueroa's medical evaluation that showed Plaintiff's condition worsened. That onset date was not arbitrarily arrived at and it does not reflect Plaintiff's ability to work (even if not up to the level for substantial gainful activity) through pain.

43. There is no cherry picking from Dr. Hansen's testimony. As summarized above, that testimony is inconsistent on Plaintiff's ability to work from 2014 to 2018.

44. Thus, the ALJ did not arbitrarily set Plaintiff's onset date as of November 2018. Plaintiff's Motion for Judgment (Docket No. 10) is denied and Defendant's Motion for Judgment (Docket No. 14) is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:	December 9, 2020
	Buffalo, New York

				          s/William M. Skretny
				       WILLIAM M. SKRETNY
				     United States District Judge